HEIDELBAUGH (HAYS v.). See Case No. 3,318.

---

## Case No. 6,323.

### In re HEILBRONN.

[12 N. Y. Leg. Obs. 65.]

District Court, S. D. New York. March, 1854.

HABEAS CORPUS—FUGITIVE FROM JUSTICE.

1. Under the treaty between Great Britain and the United States, of 1842, for the reciprocal rendition of fugitive criminals, the act of congress passed August 12, 1848 [9 Stat. 302], and the opinion in Case of Kaine, 14 How. [55 U. S.] 145, *held*, that the requisition had been properly made through the executive of the United States.

[Cited in Re Henrich, Case No. 6,369. Approved in Re Stupp, Id. 13,563.]

2. That the documentary evidence, before the United States commissioner, of the prisoner having committed the offence charged, was sufficient, both in form and substance, to warrant the commissioner's commitment of the fugitive for extradition.

[Cited in Re Macdonnell, Case No. 8,772.]

---

[2] [From 15 N. B. R. 495.]

At law.

J. R. Whiting, for the British Government.
R. Busteed, for fugitive.

INGERSOLL, District Judge. The relator, Alexander Heilbronn, makes his petition to this court, in which petition he alleges that he is imprisoned and restrained of his liberty by the marshal of the United States, of the Southern district of New York; and that he is not committed or detained by reason of any process issued by any court of the United States, or by any judge thereof, or by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree. But that the reason of such restraint and imprisonment, according to his best knowledge and belief, is, that John W. Nelson, Esq., upon the 6th day of January, A. D. 1854, issued a warrant of commitment against the relator, as an alleged fugitive from justice from Great Britain, after the hearing by said Nelson of the evidence adduced in support of the charge made against the relator. And in that petition he further alleges that the said warrant was without color of law, and that there was no evidence before said Nelson that the relator had committed any crime, and for these reasons, and for these reasons only, he prays in that petition that a writ of habeas corpus may issue, directed to the said marshal, commanding him to have the body of the relator before this court, that he may be discharged from such imprisonment, so alleged to be made without color of law.

The first question that presents itself is, what right has this court to interfere upon the facts set forth in the petition, and taking it for granted that all the allegations therein set forth are true? Neither the courts of the United States, nor the judges thereof, can interfere by way of habeas corpus in all cases of illegal imprisonment; of imprisonment made without any color of law. They can interfere only in certain specified cases; in cases specified by some particular act of congress, and where the unlawful imprisonment is under some color of law, and not where it is without any color of law. And if the party who presents his petition does not bring himself within the description of some one of the specified cases provided for by some one of the acts of congress, which authorize the issuing of the writ of habeas corpus, then no court of the United States or judge thereof, can interpose and grant the relief sought.

The power granted to the courts of the United States and the judges thereof, to interfere in cases of unlawful imprisonment, and to issue a habeas corpus, is contained in the judiciary act of 1789 [1 Stat. 73], where it is provided that "all the courts of the United States may issue writs of scire facias, habeas corpus, and all other writs not specially provided for by the statute, which may be necessary for the exercise of their respective jurisdiction, and agreeable to the principles and usages of law. And either of the judges of the supreme court, as well as judges of the district courts, may grant writs of habeas corpus for the purpose of inquiry into the cause of commitment; but writs of habeas corpus shall in no case extend to prisoners in jail, unless they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." In order to justify a United States court, or judge thereof, to discharge a prisoner on a habeas corpus, who is in jail, he must, by this provision of law, be "in custody under, or by color of the authority of the United States." And that must appear in the petition which is presented. It does not satisfactorily appear from the petition (though the fact is so) that the relator is in custody by color of the authority of the United States. Indeed, the petition states that he is in custody, "without any color of law." And if this is so, he cannot be in custody under color of authority of the United States. The petition does not state that John W. Nelson was acting under any such color of authority. It merely states that he, as an individual, without color of law, issued the warrant of commitment. It does not state or show that the marshal holds the relator under any such color of authority. It merely states that he is imprisoned and restrained of his liberty by the marshal, by virtue of the warrant issued by John W. Nelson, "without color of law." It might then be urged that the case, as presented by the petitioner, is not such a one as would authorize the court, by any law of the United States, to interfere, for the reason that it does not sufficiently show that the relator is unlawfully imprisoned, under or by color of the authority of the United States. But I do not feel inclined to dispose of the case on this ground, but to treat it as it is presented by the marshal's return, and the evidence which has been taken, by which it appears that the relator is "in custody under and by color of the authority of the United States."

The return of the marshal to the writ of habeas corpus which issued, sets forth that he holds and detains in his custody the said relator, under and by virtue of a commitment of John W. Nelson, Esq., a commissioner duly appointed by the circuit court of the United States for the Southern district of New York, under and by virtue of an act of congress entitled "An act for giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivering up of certain offenders," approved August 12, 1848, which said commitment is dated the 6th day of January, 1854. And the marshal appends to his said return a copy of said commitment. This warrant of commitment issued by Commissioner Nelson, after reciting that on the 21st day of Novem-

ber, 1853, complaint on oath was made to him, he being a commissioner duly appointed by the circuit court of the United States for the Southern district of New York, under and by virtue of an act of congress entitled "An act for the giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivering up of certain offenders," approved August 12, 1848, charging the relator with having committed, within the city of London, within the jurisdiction of the government of Great Britain, the crime of forgery, by forging the name of Charles McIntosh & Co. upon the back of a bill of exchange, for the amount of forty-three pounds seven shillings and sixpence, dated the 2d day of July, 1853, drawn by and signed "For the Governor and Company of the Bank of Ireland-- James Jackson, Cashier," and directed "To the Cashier of the Bank of England, London;" and reciting also, that whereas a treaty for "the extradition of persons committing such crime existed between the governments of the United States and Great Britain, and that the president of the United States, upon the claim by the government of Great Britain, for the extradition of the said relator, upon the charge aforesaid, in pursuance of the said treaty, did issue his warrant requiring all competent officers to investigate such charge; and that he, as such commissioner, on the 21st day of November, did issue his warrant for the apprehension of the said relator upon the said complaint, and the evidence laid before him, to the end that the evidence of his criminality might be heard and considered; and reciting also, that the said relator was apprehended and brought before him, the said commissioner, by virtue of his said warrant, and that he did hear and consider the evidence of his criminality upon said charge of forgery, and that upon such hearing he did adjudge and deem the evidence of the criminality of said relator, as charged, sufficient, under the provisions of said treaty to sustain the charge of forgery; did command the marshal of the Southern district of New York to commit the said relator to the proper jail, there to remain until he should be surrendered, in pursuance of the said treaty, or be otherwise discharged by due course of law.

By the tenth article of the treaty of 1842, entered into by the United States and Great Britain, it is stipulated by the contracting parties, that they shall, upon mutual requisitions by them or their ministers, officers, or authorities, respectively made, deliver up to justice all persons who, being charged with certain crimes, (among which crimes is forgery,) and committed within the jurisdiction of either, shall seek an asylum and be found within the territories of the other; provided that this only shall be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed. And by that article of the treaty it was further stipulated and provided, that the respective judges and magistrates of the two governments shall have power, jurisdiction and authority, upon complaint made under oath, to issue a warrant for the apprehension of the fugitive, or person so charged, that he may be brought before such judge or other magistrates respectively, to the end that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient to maintain the charge, it shall be the duty of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of such fugitive.

By an act of congress approved August 12, 1848, and passed for the purpose of giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivering up of certain offenders, it is enacted, that in all cases in which there exists, or thereafter may exist, any treaty or convention for extradition between the government of the United States and any foreign government, it shall and may be lawful for any of the justices of the supreme court, or judges of the several district courts of the United States, and the commissioners authorized so to do by any of the courts of the United States, and they shall have power, upon complaint made upon oath or affirmation, charging any person, found within the limits of any state, district or territory, with having committed within the jurisdiction of any such foreign government any of the crimes enumerated or provided for by any such treaty or convention, to issue his warrant for the apprehension of the person so charged, that he may be brought before such judge or commissioner, to the end that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient by him to sustain the charge, under the provisions of the proper treaty or convention, it shall be the duty of such judge or commissioner to certify the same, together with a copy of all the testimony taken before him, to the secretary of state, that a warrant may issue, on the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of said treaty or convention; and it shall be the duty of said judge or commissioner to issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made. And it is further provided by that act of congress, that in every case of complaint as aforesaid, and of a hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any foreign country may have been granted, certified under the hand of the person or per-

sons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended. And that it shall be lawful for the secretary of state, under his hand and seal of office, to order the person so committed by such judge or commissioner to be delivered to such person as shall be authorized in the name and on behalf of such foreign government; to be tried for the crime of which such person shall be so accused, and that such person shall be delivered up accordingly. And it is further provided by that act of congress how, under certain circumstances, a person so committed by such judge or commissioner to await the order of the executive for his extradition, may by a judge be discharged on a habeas corpus. For it is further enacted, that when any person who shall have been so committed by any judge or commissioner to remain until delivered up in pursuance of a requisition, shall not, after such commitment, within two calendar months be delivered up in pursuance thereof, (and he cannot be so delivered up without an order from the executive through the secretary of state,) and conveyed out of the United States; that in such a case it shall be lawful for any judge, upon application made to him by or in behalf of the person so committed, and upon proof made to such judge that reasonable notice of the intention to make such application has been given to the secretary of state, to order the person so committed to be discharged out of custody, unless sufficient cause shall be shown to such judge why such discharge ought not to be made. In such a case, however, where there has been a lawful commitment, no discharge at any time can be had upon the order of any judge, unless reasonable notice of an intention to make an application for a discharge has been given to the secretary of state.

Commissioner Nelson, as appears by his warrant of commitment, finds and certifies, before he proceeded to act, that a complaint on oath was made, charging the relator with having committed within the city of London, within the jurisdiction of the government of Great Britain, the crime of forgery; that the president of the United States, upon the claim by the government of Great Britain for the extradition of the said relator, upon the charge aforesaid, in pursuance of the treaty, did issue his warrant requiring him (Commissioner Nelson) to investigate said charge; that he did, after such complaint on oath and after such warrant from the president, issue his (the said Commissioner Nelson's) warrant for the apprehension of the said relator upon the said complaint; that the said relator was apprehended in pursuance of said last-mentioned warrant, and brought before him; that he did investigate the said charge; that he did consider and hear the evidence brought before him of the criminality of the relator, upon the said charge of forgery; and that, upon such hearing, he did adjudge and consider the evidence of the criminality of the relator, as charged, sufficient, under the provisions of the treaty, to sustain the charge of forgery; and that, therefore, he did issue his warrant to commit the relator to the proper jail, to give an opportunity to the government of the United States, if in the opinion of the executive the facts in the case authorized and required it, to issue a warrant for his (the said relator's) extradition. There can be no question, if this warrant of commitment is a legal and valid warrant; if the facts stated therein by Commissioner Nelson are true and not false, but that the relator is in the lawful custody of the marshal, and that he is not unlawfully imprisoned. This is admitted by the counsel for the relator. And it is farther admitted that this warrant of commitment, on the face of it, is a good and valid warrant. And if it is a good and valid warrant, although Commissioner Nelson has found the facts certified to by him, it will not necessarily follow that a warrant for the extradition of the relator will issue. The commissioner, by the act of congress of August 12, 1848, must certify to the secretary of state a copy of all the testimony taken before him, upon which he forms his opinion, so that the president can determine whether upon the testimony so taken the necessary facts are established, to justify the government in granting a warrant of extradition. By the testimony taken, and submitted to the commissioner, he in the first place determines whether, in his opinion, a complaint on oath has been made, and if it has, then he issues his warrant of arrest, and when upon that warrant the accused is brought before him, he determines upon the evidence to him submitted whether it is sufficient to sustain the charge made. If he does deem it sufficient, then he orders the accused to be holden in custody, to await the decision of the government thereon. And his doings are declared by the act of congress to be good and available to all intents and purposes. The commissioner, then, after he shall have sent to the secretary of state a copy of all the testimony taken before him, has performed his duty. The president then is to perform his duty. And that duty is to examine the testimony so taken before the commissioner, and to determine upon his responsibility and the responsibility of his constitutional advisers, whereupon it appears from such testimony that a complaint on oath was made, and whether the evidence so taken, in the opinion of the government, is sufficient to sustain the charge made. And if either of these facts, in the opinion of the government, are not sufficiently and satisfactorily made out by the evidence so taken, then it is the duty of the president not to grant a warrant of extradition. But if these facts, in the opin-

ion of the government, are satisfactorily established by such evidence, then it is the duty of the president to grant such warrant, and by so doing, faithfully carry out the stipulations in the treaty contained. And the object of the application before me, is, not only to have me determine that Commissioner Nelson has made a false finding, and to declare that his doings, which the act of congress has said should "be good and available to all intents and purposes," shall not be good and available to any intent or purpose, (for to have this application successful I must do this,) but, also, that I should prevent the president from deciding upon the evidence so transmitted by the commissioner to the secretary of state, whether a complaint on oath was made, as certified by the commissioner, and whether such evidence is sufficient, in his opinion, aided by his constitutional advisers under the provisions of the treaty, to sustain the charge of forgery against the relator; or, if such decision has already been had in the affirmative, that I should determine that such decision, so made by the president, was also a false decision.

The warrant of commitment issued by Commissioner Nelson, is attacked on several grounds. The relator, in his reply to the return of the marshal, says: First, that before the commissioner issued his warrant of arrest and had proceeded to act, upon the order of the president, no complaint under oath had been made, charging the relator with having committed the crime of forgery within the jurisdiction of Great Britain. Second, that there was no evidence before the commissioner, such as is required, to sustain against him any such charge. Third, that if there was any such evidence, that evidence was not sufficient to sustain any such charge. And upon these grounds the demand is made, that the warrant of commitment should be declared to be of no effect.

Previous to any action taken by Commissioner Nelson, certain papers, which purported to be copies of certain depositions taken and sworn to before Henry Muggeredge, an alderman and justice of the peace for the city of London, upon which original depositions a warrant of arrest had been granted, which papers were duly certified by the said Muggeredge, who issued the original warrant, under his hand, to be true copies, and which charged the relator with the crime of forgery, committed by him in London, were transmitted from England to this country, and were presented by the British minister at Washington to the president, accompanied with a demand, in behalf of the government of Great Britain, that a warrant of extradition should issue in pursuance of the treaty, in order that the relator might answer to the charge of forgery, in London, where it was said to have been committed. These papers were transmitted by the president to Commissioner Nelson, accompanied with a warrant to him to investigate the charge, as made and set forth in such papers. Those papers and this warrant from the president were handed to Commissioner Nelson, and before he issued his warrant of arrest, he took the deposition of Edward Funnell, one of the police officers of London, in which he swore that he was acquainted with Henry Muggeredge; that he was an alderman and justice of the peace of the city of London; that he had known him to act repeatedly as such; that he saw him sign the certificate to the papers purporting to be copies; that he compared the papers purporting to be copies with the original papers in the possession of said Muggeredge, and that he saw the original affidavits sworn to and signed by the parties thereto in the presence of the said Muggeredge; and that the papers then before him, Commissioner Nelson, were true and correct copies of the original depositions. There was then abundant proof submitted to Commissioner Nelson, before he issued his original warrant of arrest, that Henry Muggeredge was an acting alderman and justice of the peace of the city of London; that certain papers were submitted to him, copies of which were before Commissioner Nelson, the same having been transmitted to him by the president, charging the relator with having committed the crime of forgery in the city of London; and that those papers were sworn to before the said Muggeredge. If then the said Muggeredge, as such alderman and justice of the peace, had power and authority over the crime charged, to investigate the same, to administer an oath to the parties who signed such papers, and to issue the warrant which was issued by him, then there was, before Commissioner Nelson proceeded to act, a complaint under oath, made, charging the relator with having committed the crime of forgery in the city of London, and such a complaint under oath as satisfies the provisions of the treaty. For the treaty does not require that the complaint under oath should be made directly to a magistrate in the country to which the alleged fugitive has fled; but if it is made in the country where the crime was committed, to a magistrate who has power to administer oaths and to investigate the criminal charge made, and take jurisdiction of the same, and the same, or a duly certified copy of the same, is transmitted to the government of the country where the fugitive has sought an asylum, and the government of the country to which the same has been transmitted recognizes it as authentic, then the terms of the treaty, which requires a complaint under oath to be made, has been satisfied. When the Case of Kaine was before the supreme court of the United States, 14 How. [55 U. S.] 103, some of the judges differed in opinion as to the effect of such testimony as was given by Edward Funnell before Commissioner Nelson in this case. While all agreed that such testimony was sufficient to prove that the foreign

magistrate was duly appointed to the office which he assumed to have and hold, there was a difference of opinion whether it was sufficient to prove that he had power and authority to act in the way that he had assumed to act,—some of them contending that such testimony was also sufficient to prove that such foreign magistrate had jurisdiction and authority to act in the matter in the way that it is proved the said magistrate did act, while others contended that it was not sufficient to prove any such jurisdiction and authority in the foreign magistrate. We are not, in this case, troubled with any such question. In the Case of Kaine the government of Great Britain made no demand upon the government of this country previous to the examination before the commission. They presented no papers to the president, purporting to be copies of depositions which charged any crime. The president issued no warrant to the commissioner to have him investigate the case. But in the case of the relator, the government of Great Britain did make demand upon the government of this country that the relator must be delivered up to them, and accompanied that demand with papers charging the relator with the crime of forgery, committed in London, and purporting to be a copy of a complaint, under oath, made to a magistrate having jurisdiction and power to act. Upon the receipt of these papers by the president, he issued his warrant to Commissioner Nelson to investigate the case. By issuing this warrant the government of this country recognized and acknowledged the papers to be genuine, and that the foreign magistrate had jurisdiction over the crime as charged, and power to act as he had assumed to act. By requiring Commissioner Nelson to investigate the facts, the government of this country admitted that the papers were genuine; that a complaint under oath had been made in pursuance of the treaty; for Commissioner Nelson could not investigate the facts until such complaint, on oath, had been made. When these papers, which purported to be copies of certain proceeding had before the foreign magistrate, were presented by the British minister to the government of this country, the good faith of his nation was pledged that the foreign magistrate, before whom the originals were taken, had authority to act, and had jurisdiction over the crime charged, and that the facts stated in them were true. They were received by this government upon that pledge. And this is sufficient to establish the fact, not only that Henry Muggeredge was an alderman and justice of the peace for the city of London, but also the further facts, that he had jurisdiction over the crime charged, and power to administer oaths to the persons who gave their depositions before him. And the authority and jurisdiction of the said Muggeredge being thus proved, these papers, executed before him, fully proved that a com-

plaint on oath was made against the relator, charging him with having committed the crime of forgery in London, before Commissioner Nelson issued a warrant for his arrest. See opinion of Judge Nelson in Case of Kaine, 14 How. [55 U. S.] 145.

It is further claimed by the relator that there was no evidence of any kind before Commissioner Nelson to prove that he had committed the crime of forgery, as set forth and charged in the complaint under oath. The evidence that was submitted to Commissioner Nelson were copies of certain depositions upon which an original warrant in London had been granted by Henry Muggeredge, alderman and justice of the peace for the city of London, and which constitute the complaint on oath, certified under the hand of the said Muggeredge, and attested by the person producing them to be true copies of the original depositions, and this was the only evidence before him of the criminality of the relator. Such copies are, by the act of congress of the 12th of August, 1848, made evidence in a case of this kind, upon a hearing before a commissioner, upon the return of a warrant of arrest, as well as to prove that a complaint on oath had been made. It has been already shown that the action of the two governments upon the demand made by the British minister for the extradition of the relator, afforded sufficient proof that Henry Muggeredge was not only an alderman and justice of the peace for the city of London, but that he had jurisdiction and authority over the offence charged, and power to administer oaths and take depositions. And it has been proved that the papers produced as copies were true copies of the original depositions taken. These depositions go to prove that the relator—he being in the employ of McIntosh & Co., as their clerk—did, without any authority from them, and in fraud of their rights, endorse their name in the similitude of the handwriting of one of the partners, to a bill of exchange payable to their order at the Bank of England, and did procure from the bank the amount of said bill, and immediately thereafter absconded to this country. The facts, then, in these depositions, tend and go to prove, and are evidence to prove, that the offence charged has by the relator been committed. But it is claimed by the counsel of the relator that no depositions taken in England, or copies of any such depositions, would or could be evidence before Commissioner Nelson; that on the trial of the case he should have disregarded and rejected them, for the reason, as he alleges, that the law of congress authorizing this kind of testimony is a nullity; that it is void, opposed to the treaty, and unconstitutional. By the treaty the United States stipulated that they would, upon a certain kind of proof being produced to establish the crime of forgery committed in Great Britain, by any one who should fly to this country, deliver up, to the authorities of the country where the offence was

committed, the individual charged with the crime, that he might there be tried. That treaty became the law of the land. But it did not prevent the congress of the United States from making further enactments on the same subject, unless such further enactments annulled or restricted the stipulations contained in the treaty; and I cannot conceive how the act of August 12, 1848, either annuls or restricts any of the stipulations in that treaty contained. The law of congress does not, in any way, interdict or restrain the engagements of the treaty; and as it does not and is not opposed to the provisions of the constitution, it was in the competency of congress to pass it. Judge Betts, when the Case of Kaine was before him, acknowledged the validity of this act of congress. When that case was before Judge Nelson, he acknowledged its validity. And when the case was before the supreme court at Washington, the judges there acknowledged its binding force. The law must, therefore, be considered a valid law. And being so considered, there was evidence before Commissioner Nelson to prove that the crime of forgery, as charged against the relator, was by him committed in London.

The counsel for the relator further claims that, if there was evidence before Commissioner Nelson to establish the charge that he was called upon to investigate; that that evidence was not sufficient to establish such charge; that he erred when he found that the evidence was deemed by him sufficient to sustain the charge; and that, therefore, the relator ought not to be holden under the warrant of commitment which he issued. The first question that presents itself on this branch of the case is, what right had I to interfere, even if I should be of the opinion that he erred in judging of and weighing the evidence, when he found that the evidence was deemed by him sufficient to establish the charge he was called upon to investigate? Commissioner Nelson has the same authority, in a matter of this kind, as a judge of the supreme court would have, had he undertaken to investigate the charge. And I have no more right to sit in judgment on the opinion by him framed, that the evidence was deemed by him sufficient to sustain the charge, when there has been any legal evidence before him to prove the charge, than I should have to sit in judgment on the opinion of a judge of the supreme court in a case under the like circumstances. I have no such power given to me by the law; and I have no disposition to exercise a power to discharge upon a habeas corpus, or to attempt to exercise such power, unless it is given to me by law. The act of congress, in prescribing the duties and the powers of the commissioner, provides that "if on such hearing the evidence be deemed sufficient by him (the commissioner) to sustain the charge, under the provisions of the proper treaty," it shall, among other things, be his duty to issue his warrant of commitment of the person accused, to wait the determination of the president, whether or not he will, upon the evidence taken before the commissioner, issue a warrant of extradition. Where there is any legal evidence before the commissioner to establish the charge, and that legal evidence is deemed by him sufficient, no matter how many others may deem it insufficient, and he grants a warrant of commitment, that commitment must stand, and no judge has a right to disregard it, or to render it ineffectual, at least not until the expiration of two calendar months after it shall have been issued. In such a case no one can revise the opinion of the commissioner but the president. The president has that power. If he should be of the opinion that the evidence taken before the commissioner on the hearing was not sufficient to sustain the charge, then it would be his duty to withhold a warrant of extradition. If he should be of the opinion that it was sufficient, then it would be his duty to grant such warrant. The necessities of the case, therefore, do not require that I should express an opinion upon the sufficiency of the evidence upon the hearing before the commissioner. As that evidence has been produced before me, however, I will state that, in my judgment, it was sufficient to hold the relator to a trial, and that the determination of the commissioner was fully authorized and justified. It was his duty to decide as he did. I will not give my reasons for this opinion, for I do not feel disposed to furnish an argument which may be used by others against the relator on the trial. His youth and apparent simplicity would induce me rather to aid in his acquittal than to aid in his conviction. My duty, however, compels me to declare that he must remain in the custody of the marshal, under the warrant of commitment issued by Commissioner Nelson, in pursuance of the requirements thereof.